**Roger FRAWLEY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 517–87C.

United States Claims Court.

May 31, 1988.

John R. Rice, Juneau, Alaska, for plaintiff.

E. Richard Southern, Washington, D.C., with whom was Asst. Atty. Gen. John R. Bolton, for defendant.

## ORDER

### MOODY R. TIDWELL, III, Judge:

This contract case came before the court on defendant's motion to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. RUSCC 12(b)(1), (b)(4). For reasons set forth below, defendant's motion to dismiss is granted and plaintiff's complaint is dismissed.

## FACTS

On May 30, 1985, plaintiff was awarded a contract by the United States Postal Service for the purpose of operating and managing a postal substation in Juneau, Alaska. After operating and managing the postal substation for approximately two years, plaintiff entered into an agreement with a third party to purchase plaintiff's business for $50,000 and take over, by assignment, the Postal Service contract. Prior to consummation of the sale, the United States Postal Service gave plaintiff a "60 day Termination Notice" effective July 7, 1987. The notice bore no indication that it was a termination for the convenience of the government or a termination for default. Reasons delineated in the terse notice purporting to justify termination were complaints ranging from "bank errors, paperwork errors, and consumer complaints on both service and location." In view of this language, the court may infer that defendant intended for the termination to be one for default. The notice was signed by Kent Eriksen, Director, Customer Service, U.S.P.S., Juneau, Alaska.

By letter dated June 11, 1987, before the "Termination Notice" became effective, plaintiff's attorney wrote the Postmaster for the United States Postal Service in Juneau, Alaska, requesting reinstatement of plaintiff's contract and conveying plaintiff's intention to file suit in this court for damages if the contract was not reinstated. Plaintiff received no response to his attorney's letter, and his complaint was filed in this court on August 21, 1987.

In support of defendant's motion to dismiss, defendant argued that the only document submitted by plaintiff that could possibly be interpreted as a claim, *i.e.*, the letter of June 11, 1988, which also requested damages in excess of $50,000.00, was not properly certified in accordance with the Contract Disputes Act. Defendant also argued that plaintiff's claims seek damages sounding in tort and, as such, are clearly beyond the jurisdiction of this court. 28 U.S.C. § 1491 (1982).

Plaintiff contended that the letter dated June 11, 1987, sent to the Postmaster, Juneau, Alaska, was a properly certified claim, submitted in writing to the contracting officer. Plaintiff also argued that the "action [in this court] is not precluded by the fact that it includes claims which are in the nature of tort." Rather, plaintiff contended that "this entire matter is a claim, which, broadly speaking is one for wrongful termination of a government contract." In his complaint and supporting documents, plaintiff alleged that defendant "fraudulently interfered with a contract between Plaintiff and a third unrelated party causing Plaintiff damages for the sale of his business in the amount of Fifty Thousand Dollars and no cents." (Apparently, the sale was contingent upon assignment of the USPS contract to the purchaser.) When the contract was terminated, the purchaser declined to complete the purchase thereby forcing plaintiff to liquidate his business. Plaintiff also sued for $30,000 in lost profits anticipated from the USPS contract; damage to reputation; and punitive damages. The complaint concluded: "Actual Damages before award of punitives (sic) are estimated by Plaintiff to exceed Eight[y] Thousand dollars ($80,000.00)."

## DISCUSSION

### A. *Tort Claims and Punitive Damages*

Plaintiff is reminded that a claim for damage to reputation is a claim sounding in tort over which this court has no jurisdiction. 28 U.S.C. § 1491 (1982). Nor, can the court award punitive damages.

*Leesona Corp. v. United States,* 220 Ct.Cl. 234, 252, 599 F.2d 958, 969, *cert. denied,* 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979); *Laningham v. United States,* 2 Cl.Ct. 535, 558 (1983). As to these claims, defendant's motion to dismiss is easily granted.

B. *Claims Under The Contract Disputes Act*

When, for whatever reason, parties to an action fail to, or inadequately, address the court's subject matter jurisdiction, the court is obliged to do so of its own accord. *Mitchell v. Maurer,* 293 U.S. 237, 244, 55 S.Ct. 162, 165, 79 L.Ed. 338 (1934). This court opines that the parties in this action have not recognized the threshold inquiries: whether a claim has accrued and, if so, whether plaintiff's claim in this court is the same claim presented to the contracting officer for a final decision? In other words, did plaintiff seek the requisite contracting officer's decision vis-a-vis any accrued claims and did that decision address the same damage claims now presented to this court? The court concludes that no claim has yet accrued and, in the alternative, that the damage claims now before the court have not been the subject of a final decision by a contracting officer.

It is black letter law that a contractor may appeal only "disputes" as defined in the Contract Disputes Act. 41 U.S.C. §§ 601–613 (1982). A termination for default, for example, without more, is not such a contract dispute. *Gunn–Williams v. United States,* 8 Cl.Ct. 531, 534 (1985). The *Gunn–Williams* court held that:

> The Government in terminating a contract for default has merely administratively exercised one of its contractual rights. At this point, there is no dispute between the parties—the contractor can accept the default termination, and the Government can decide not to pursue its contractual remedies for default (*e.g.,* assessment of excess costs of reprocurement, assessment of liquidated damages, and recovery of earlier paid progress payments). A "claim," under the Contract Disputes Act, does not exist until there is a dispute between the parties.

*See Keystone Coat & Apron Mfg. Corp. v. United States,* 150 Ct.Cl. 277 (1960).

■ The court believes that any contract termination, even one properly executed, does not create a claim cognizable under the Contract Disputes Act unless and until a party to the contract asserts contractually remedial rights against the other. In the first instance, there must be a dispute, something more than the bare termination of a contract.

If, for example, a contractor disputes a termination for default, it may appeal the contracting officer's final decision and seek to convert the default termination to one for the convenience of the government and to recover the statutory and contractually authorized monetary damages. A "claim" must be submitted to the contracting officer in writing, demanding payment of money; adjustment of the contract; or other such relief; which is disputed. No claim exists in the absence of a dispute. *Mayfair Constr. Co. v. United States,* 841 F.2d 1576 (Fed.Cir.1988). Such a claim would be ripe for appeal to a board of contract appeals or this court because a dispute having direct monetary consequences had accrued but, the appeal may be brought only after the contractor submits a written claim for allowable damages, certified, if necessary, and received a final decision of the contracting officer, or a presumed denial of the claim after sixty days.

■ In this case plaintiff asserted that his June 11, 1987, letter constituted a valid claim for reinstatement and damages. The court is unwilling to read the letter so broadly. The court believes that plaintiff's letter to the contracting officer was not an assertion of a monetary contractual remedy as contemplated by the Act. The alleged claim submitted by plaintiff in this case to the contracting officer asserted that the "termination of [t]his contract was arbitrary and capricious on the part of the U.S. Postal Service." Although the claim referred to consequential damages due to the termination, the claim emphasized that plaintiff intended to take the damage matters to the United States Claims Court "if

he [could] not get the U.S. Post Office to reinstate his contract to operate the downtown sub-station." The letter continued: "Before Mr. Frawley (plaintiff) can proceed to the Claims Court he must first petition the Juneau contracting officer for re-instatement of his contract. If the contracting officer does not make a written determination regarding this petition within 60 days Mr. Frawley can then proceed to the Claims Court." The remainder of the letter addresses the facts surrounding the contract and its termination. The court concludes that even a generous reading of the June 11, 1987 letter does not permit a construction that plaintiff requested the contracting officer for a final decision on damage claims arising out of the termination of plaintiff's contract. The letter is merely a request for reinstatement of the contract, not a monetary remedy contemplated under the Contract Disputes Act.

■ Moreover, prior to the June 11, 1987 letter, and to this date, defendant has never indicated, much less formally stated, that it intended to exercise any of its contractual remedies that would give rise to a dispute claim. A request for reinstatement of the contract, even one presumed denied, does not fall within the ambit of a contractual remedy, the denial of which would cause a claim to accrue. *Gunn–Williams v. United States*, 8 Cl.Ct. 531, 534 (1985). In the absence of an exercise, or even a threat of exercise, by defendant of its contractual remedies against plaintiff no claim arises as intended in the Contract Disputes Act. Defendant must affirmatively seek to exercise one of its contractual remedial rights with which plaintiff disagrees, *Mega Constr. Co. v. United States*, 14 Cl.Ct. 555 (1988), such as a demand for payment to defendant for excess costs incurred by reason of the default or defendant's refusal to recompense plaintiff for its allowable damages. In the absence of such a valid claim, this court is without jurisdiction to hear the matter. *Gunn–Williams*. The present suit is premature in that a challenge to a naked termination, without more, is not a dispute over which the Contract Disputes Act gives this court jurisdiction.

In the alternative, the court finds that plaintiff failed to follow the necessary procedural steps in order to appeal a proper claim for damages resulting from the events in question.

■ The Contract Disputes Act requires that "all claims by a contractor against the government shall be in writing and shall be submitted to the contracting officer for a decision." 41 U.S.C. § 605(a) (1982). In addition, the Act requires:

> For claims of more than $50,000, the contractor shall certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, and that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable.

41 U.S.C. § 605(c)(1).

Compliance with these requirements is mandatory and constitutes a jurisdictional prerequisite to the filing of a complaint in this court. *Thoen v. United States*, 765 F.2d 1110, 1116 (Fed.Cir.1985); *Arlington Alliance, Ltd. v. United States*, 231 Ct.Cl. 347, 357, 685 F.2d 1353, 1359 (1982); *Paragon Energy Corp. v. United States*, 227 Ct.Cl. 176, 184, 645 F.2d 966, 971 (1981); *Christian Appalachian Project v. United States*, 10 Cl.Ct. 595, 597 (1986); *Gunn–Williams v. United States*, 6 Cl.Ct. 820, 822 (1984); *Metric Constr. Co. v. United States*, 1 Cl.Ct. 383, 389 (1983). Until a claim has been properly submitted, and when necessary, certified, to the contracting officer, and the contracting officer has rendered a final decision, or is deemed by inaction to have denied the claim, claimant has not exhausted its administrative remedies. *Tri-Central, Inc. v. United States*, 230 Ct.Cl. 842, 845 (1982). In this case, the plaintiff has not submitted a claim to the contracting officer for a monetary adjustment. The June 11, 1987 letter can hardly have been understood as a claim for damages submitted to the contracting officer for a final decision. *Paragon Energy Corp. v. United States*, 227 Ct.Cl. 176, 184, 645 F.2d 966, 971 (1981). Without a decision specifically addressed to damages aris-

ing out of the operation or termination of the contract, this court is without jurisdiction. *See W.M. Schlosser Co. v. United States,* 705 F.2d 1336, 1338–39 (Fed.Cir. 1983).

### CONCLUSION

. The court concludes that the termination of plaintiff's contract and his request for reinstatement did not cause a Contract Disputes Act claim or dispute to accrue over which this court has jurisdiction. In the alternative, the court concludes as a matter of law that the June 11, 1987, letter to the contracting officer cannot be construed as a petition for a final decision on the damage issues presented to the court. Plaintiff's damage claims are not ripe for judicial review unless and until administrative remedies provided under the contract have been properly sought and exhausted. Defendant's motion to dismiss is, therefore, granted. The Clerk of the court is directed to dismiss the complaint. Costs to defendant.

IT IS SO ORDERED.